# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Newport News Division

| | |
|---|---|
| **Kevin del Cid Diaz**,<br><br>         Plaintiff,<br><br>    v.<br><br>**Custom Framing Enterprise, LLC**<br>a Virginia limited liability corporation,<br><br>    Serve:  Marian Szwanczar, Registered Agent<br>            5005 82nd Street<br>            Hampton, VA 23605<br><br>and **Marian Szwanczar**,<br><br>         Defendants. | JURY TRIAL DEMANDED<br><br><br>Case No.: |

## COMPLAINT

### Preliminary Statement

1. This lawsuit seeks to recover damages incurred by the Plaintiff, KEVIN DEL CID DIAZ, as a result of Defendants, CUSTOM FRAMING ENTERPRISE, LLC, and MARIAN SZWANCZAR'S, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and, in the alternative, the Virginia common law of contracts, quantum meruit, and unjust enrichment.

2. Mr. del Cid Diaz regularly worked more than forty hours per week for Defendants but was not paid an overtime premium. Defendants also failed to compensate Mr. del Cid Diaz for offsite work he performed at properties owned by Defendant Szwanczar.

1

**Jurisdiction and Venue**

3. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question). The Court has supplemental jurisdiction over Plaintiff's state-law claims, which form part of the same case or controversy, pursuant to 28 U.S.C. § 1367.

4. The Court has personal jurisdiction over Defendant Custom Framing Enterprise, LLC ("Custom Framing") because (1) the company's registered office is located in Virginia; (2) it transacts or transacted business in Virginia, and (3) as Mr. del Cid Diaz's joint employer, the company's acts and omissions in Virginia gave rise to the wage violations that form the basis of this complaint.

5. This Court has personal jurisdiction over Defendant Marian Szwanczar because (1) upon information and belief, he is a Virginia resident; (2) he is a member of Custom Framing and conducted regular business in Virginia during Mr. del Cid Diaz's employment at Custom Framing, and (3) as Mr. del Cid Diaz's joint employer, his acts and omissions in Virginia gave rise to the wage violations that form the basis of this complaint.

6. Venue is proper in the Eastern District of Virginia because (1) on information and belief, Defendant Szwanczar resides in this district and Defendant Custom Framing has or had its principal place of business in this district, and (2) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. *See* 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 127(a).

7. The Newport News Division is the proper division because Defendant Custom Framing has its registered address in the City of Hampton, and because a substantial part of the

events or omissions giving rise to this complaint occurred in this division. *See* Local Rule 3(B)(2).

## PARTIES

8. Plaintiff Kevin del Cid Diaz is an adult resident of Virginia.

9. Defendant Custom Framing Enterprise, LLC, is a Virginia limited liability company. Its registered office is located at 5005 82nd Street, Hampton, VA 23605. The company provides construction framing services for building projects.

10. Custom Framing's legal corporate existence was terminated on April 30, 2019, for failure to pay the annual registration fee. Even after its status was cancelled, Custom Framing continued to operate. Custom Framing's corporate status was reinstated on September 2, 2020. Custom Framing's corporate status was canceled again on April 30, 2021, and reinstated on August 24, 2021.

11. Upon information and belief, Defendant Marian Szwanczar is an adult resident of Virginia. He is a member of Custom Framing.

12. Defendant Szwanczar controlled the operation of Custom Framing. He hired Mr. del Cid Diaz, set his pay rates, and issued Mr. del Cid Diaz his pay. He instructed Mr. del Cid Diaz on where and when to work and gave him work assignments.

13. On information and belief, the gross annual business volume of Custom Framing exceeded $500,000 at all relevant times.

14. On information and belief, at all relevant times, Custom Framing had at least two employees who handled goods that had been moved in interstate commerce.

## FACTS

### Plaintiff's Work Generally

15. Mr. del Cid Diaz worked for Defendants from approximately mid-May 2019 through the third week of December 2019. He did not work for any other employers during this time.

16. Defendant Szwanczar hired Mr. del Cid Diaz, who was 16 years old at the time of hire.

17. Mr. del Cid Diaz's brother was employed by Defendants before Mr. del Cid Diaz was hired. Mr. del Cid Diaz's brother inquired with Defendant Szwanczar about hiring Mr. del Cid Diaz, and Defendant Szwanczar instructed the brother to bring Mr. del Cid Diaz to work.

18. Mr. del Cid Diaz came to the framing workshop located in Hampton, Virginia and spoke with Defendant Szwanczar, who maintained an office at the workshop. Defendant Szwanczar offered Mr. del Cid Diaz employment at an hourly wage rate of $10, and instructed him to arrive daily at the framing workshop at 7:30 am. Mr. del Cid Diaz began working for Defendants that same day.

19. About a week later, Defendant Szwanczar increased Mr. del Cid Diaz's hourly wage rate to $11.

20. Mr. del Cid Diaz performed framing work for Defendants at the Custom Framing workshop. He made doors, windows, and walls for installation in new houses. His duties included cutting plywood and nailing wood.

21. There were approximately twenty workers employed by Defendants at the framing workshop.

22. Defendant Szwanczar was usually present at the framing worksite several times per week in the evenings. When he was present, he would give the workers instructions, such as telling them to work faster.

23. Defendant Szwanczar distributed workers' payments and time records.

24. A Custom Framing supervisor directly supervised Mr. del Cid Diaz's work. The supervisor reported to Defendant Szwanczar on the employees' work. Upon information and belief, the supervisor carried out his duties under the direction of Defendant Szwanczar.

25. Defendant Szwanczar hired Mr. del Cid Diaz. Upon information and belief, he had the power to fire Mr. del Cid Diaz.

26. Defendant Szwanczar set Mr. del Cid Diaz's pay rate and handed him his pay in cash every two weeks.

27. Defendant Szwanczar instructed Mr. del Cid Diaz on his work schedule and work assignments.

28. When Mr. del Cid Diaz had a question regarding his pay, he spoke with Defendant Szwanczar.

29. Defendants also required Mr. del Cid Diaz to perform work at properties owned by Defendant Szwanczar, including two houses in Newport News and a farm in rural Virginia.

30. For this offsite work, Mr. del Cid Diaz primarily performed yardwork at Defendant Szwanczar's houses. Defendant Szwanczar instructed Mr. del Cid Diaz on what to do, such as gathering leaves or changing light bulbs, and was occasionally present while Mr. del Cid Diaz worked.

31. At one of the houses, Defendant Szwanczar instructed Mr. del Cid Diaz to cut down trees to clear the land in back of his house. He told Mr. del Cid Diaz that he planned to build a pool there for the framing workers to use.

32. Defendant Szwanczar provided Mr. del Cid Diaz a chain saw and machine for grinding wood for this work.

33. At the farm, Mr. del Cid Diaz repaired fences that enclosed cow pastures. Defendant Szwanczar was present at the farm and provided Mr. del Cid Diaz instructions.

34. Mr. del Cid Diaz performed this additional work at Defendant Szwanczar's properties alone or with several other Custom Framing employees. Defendant Szwanczar only selected certain employees to perform work at his properties. Other Custom Framing employees, including Mr. del Cid Diaz's brother, only worked at the framing workshop.

35. Mr. del Cid Diaz did not supervise or oversee the work of any other employees.

36. Defendants provided Mr. del Cid Diaz protective goggles and a nail gun. During his first workweek, Mr. del Cid Diaz purchased a tape measure and hammer for the job. Aside from this, he did not bring any of his own tools to the job.

37. In December 2019, Mr. del Cid Diaz injured his finger with a nail gun while working at the framing workshop.

38. The day after the injury, Defendant Szwanczar went to Mr. del Cid Diaz's home and asked him to return to work, claiming that his injury was not serious. When Mr. del Cid Diaz insisted that the injury prevented him from working, Defendant Szwanczar told Mr. del Cid Diaz that if he went to a doctor, he should tell the doctor that he was injured at home rather than at work.

39. Mr. del Cid Diaz quit working for the Defendants towards the end of December 2019.

**Plaintiff's Work Schedule**

40. Mr. del Cid Diaz worked Monday through Friday for Defendants. He occasionally worked at the framing workshop on Saturdays as well.

41. He missed approximately four days of work in one work week following his workplace injury in December 2019.

42. The hours Mr. del Cid Diaz worked at the framing worksite varied depending on the size of the framing project. The hours he worked at Defendant Szwanczar's properties also varied week to week.

43. Mr. del Cid Diaz usually began work at approximately 7:30 am.

44. Mr. del Cid Diaz estimates that during his first month of employment, he worked daily from approximately 7:30 am to 10 pm at the Custom Framing workshop.

45. After the first month, Mr. del Cid Diaz's end time varied from day to day. Sometimes he worked until 7 or 8 pm or later. On slower days, he would leave around 3 or 4 pm.

46. Mr. del Cid Diaz was provided an unpaid lunch break between 12 pm and 1 pm. On days when he worked past 6 pm, he was provided an unpaid dinner break between 6 pm and 7 pm.

47. The time records that Defendants provided Mr. del Cid Diaz show that he often worked more than 40 hours per week at the Custom Framing workshop.

48. Beginning after Mr. del Cid Diaz's first month of employment, Defendant Szwanczar directed Mr. del Cid Diaz to perform additional work at his properties.

49. Initially, Defendant Szwanczar approached Mr. del Cid Diaz at the framing workshop and informed him that since the framing work was slowing, he wanted Mr. del Cid Diaz

to perform work at his house. Defendant Szwanczar then transported Mr. del Cid Diaz from the framing workshop to his house in Newport News.

50. Mr. del Cid Diaz estimates that he worked at Defendant Szwanczar's houses once or twice per week after his first month of employment.

51. Sometimes, Mr. del Cid Diaz worked at the framing worksite in the morning and then Defendant Szwanczar brought him to one of his houses to work for the afternoon.

52. Sometimes, Mr. del Cid Diaz spent the entire day working at Defendant Szwanczar's properties. On these days, the worker who gave Mr. del Cid Diaz rides to the framing workshop each morning would inform him that Defendant Szwanczar instructed Mr. del Cid Diaz to work at his house that day. The worker would drop Mr. del Cid Diaz off at Defendant Szwanczar's house and then continue on to the framing workshop.

53. Mr. del Cid Diaz estimates that he performed work for Defendant Szwanczar at Defendant Szwanczar's farm in rural Virginia on at least four occasions.

54. On these days, Defendant Szwanczar picked up Mr. del Cid Diaz at his house in Newport News around 5 am and drove him to the farm, several hours away. Mr. del Cid Diaz worked all day at Defendant's farm.

55. On some occasions, he was provided meal breaks at the farm; on other occasions, he worked all day without meal breaks. In the evening, Defendant Szwanczar drove Mr. del Cid Diaz back to Newport News, arriving around 11 pm or 12 am.

56. After approximately the first month, Defendant Szwanczar provided Mr. del Cid Diaz a punch card that was subsequently used to track Mr. del Cid Diaz's hours at the Custom Framing workshop.

57. Before receiving his punch card, Mr. del Cid Diaz was paid based on the hours his brother worked, which were approximately the same hours he worked that month.

58. Defendants did not track the hours Mr. del Cid Diaz worked at Defendant Szwanczar's properties using a punch machine. Upon information and belief, Defendants did not keep track of the time Mr. del Cid Diaz performed work at Defendant Szwanczar's properties.

59. Defendant Szwanczar told Mr. del Cid Diaz that when he performed work at Defendant Szwanczar's properties, he would be paid for the same hours his brother worked at the framing workshop. In other words, he would be paid as if he had worked the entire day at the framing workshop.

60. Every two weeks, Defendant Szwanczar provided Mr. del Cid Diaz with a printout of his time records for that pay period. The time records only included the time Mr. del Cid Diaz worked at the Custom Framing workshop and not the time Mr. del Cid Diaz performed work at Defendant Szwanczar's properties. It was apparent to Mr. del Cid Diaz that Defendants were not, in fact, paying him for the additional work he performed.

61. The time records Defendants provided to Mr. del Cid Diaz list his name as "Peluchin, Peluchin" or "Peluchito, Peluchito," Spanish words that translate to "little stuffed animal" or "little teddy bear."

62. On occasion, Defendants did not provide Mr. del Cid Diaz with time records. Defendant Szwanczar explained that the printer was not working.

63. Mr. del Cid Diaz kept some but not all of the time records he was given.

64. Defendants had an obligation under the FLSA to maintain accurate time records of Mr. del Cid Diaz's hours worked.

## Pay Practices and Pay Problems

65. For this first workweek, Defendants paid Mr. del Cid Diaz $10 per hour. After the first week, Defendants increased Mr. del Cid Diaz's hourly wage rate to $11.

66. Defendants paid Mr. del Cid Diaz at the same rate for all hours worked regardless of how many hours he worked per week.

67. The time records Defendants provided Mr. del Cid Diaz include three columns labeled "Reg," "Ot1," and "Ot2." All of the hours Mr. del Cid Diaz worked at the framing workshop are listed in the "Reg" column, including overtime hours.

68. The time records Defendants provided did not state Mr. del Cid Diaz's wage rate or earnings. Defendants did not provide Mr. del Cid Diaz any documentation regarding his wages.

69. Defendants did not pay Mr. del Cid Diaz at all for the work he performed at Defendant Szwanczar's houses or farm.

70. Defendant Szwanczar told Mr. del Cid Diaz that he would receive compensation for the hours he worked at Defendant Szwanczar's properties. Mr. del Cid Diaz expected that payment for his work at Defendant Szwanczar's properties would be included in the biweekly pay he received at the Custom Framing workshop, but it never was.

71. Defendants paid Mr. del Cid Diaz every other Friday. Mr. del Cid Diaz received his wages in cash directly from Defendant Szwanczar.

72. On one occasion, Mr. del Cid Diaz noticed that Defendants had not paid him for all the hours he worked at the Custom Framing worksite. He complained to Defendant Szwanczar, who gave him more money. Mr. del Cid Diaz witnessed other workers complain to Defendant Szwanczar about their pay as well.

73. Defendants never paid Mr. del Cid Diaz a time-and-a-half overtime premium for the hours he worked beyond 40 in a workweek.

74. Defendants never paid Mr. del Cid Diaz for the time he spent working at Defendant Szwanczar's properties.

75. On information and belief, Defendants did not display or keep posted a notice in a conspicuous place explaining Mr. del Cid Diaz's overtime rights under the federal Fair Labor Standards Act.

76. On one occasion, Mr. del Cid Diaz was present when other workers complained to Defendant Szwanczar about not getting paid overtime. The workers had just received their pay from Defendant Szwanczar at the Custom Framing workshop. Mr. del Cid Diaz heard Defendant Szwanczar respond that the workers were not entitled to overtime.

77. Upon information and belief, Defendants made no effort to pay Mr. del Cid Diaz the legally-required overtime premium, even though Defendants were aware of their obligation to pay overtime and Mr. del Cid Diaz was plainly working overtime.

## CLAIMS

**COUNT 1: Fair Labor Standards Act, 29 U.S.C. §§ 201-219, *against Defendant Custom Framing and Defendant Szwanczar***

78. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

79. At all times relevant to this action:

    a. Mr. del Cid Diaz was Defendants' employee within the meaning of 29 U.S.C. § 203(e)(1);

    b. Defendants were Mr. del Cid Diaz's joint employers within the meaning of 29 U.S.C. § 203(d);

    c. Defendants jointly employed Mr. del Cid Diaz within the meaning of 29 U.S.C. § 203(g); and

    d. Mr. del Cid Diaz was engaged in commerce or the production of goods for commerce, and/or was employed by Defendants in an enterprise engaged in commerce or the production of goods for commerce, within the meaning of 29 U.S.C. § 203(b).

80. Defendants failed to pay Mr. del Cid Diaz a time-and-a-half overtime premium for all the hours that he worked beyond 40 in a workweek.

81. By failing to pay Mr. del Cid Diaz an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

82. As a result of Defendants' FLSA violation, Plaintiff was harmed and is entitled to recover his overtime wages, plus an additional equal amount in liquidated damages, the cost of the lawsuit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

83. Defendants' violation of the FLSA was "willful" within in the meaning of 29 U.S.C. 255(a), in that Defendants made no effort whatsoever to pay Mr. del Cid Diaz the proper overtime premium notwithstanding the fact that he was plainly working more than 40 hours a week.

84. In the alternative, by not displaying a FLSA poster at the worksite advising workers of their FLSA rights as required by DOL regulations, the statute of limitations is tolled.

### COUNT II: Breach of Contract under Virginia Common Law (in the alternative to FLSA), *against Defendant Custom Framing*

85. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

86. An employment contract existed between Mr. del Cid Diaz and Defendant Custom Framing by virtue of Custom Framing offering employment to Mr. del Cid Diaz and Mr. del Cid Diaz accepting the offer by performing work for Custom Framing.

87. The contract was formed in Virginia under Virginia law.

88. Custom Framing failed to pay Mr. del Cid Diaz for all the work he performed – namely, the work he performed at Defendant Szwanczar's properties – thereby breaching the contract.

89. As a result of Custom Framing's breach, Mr. del Cid Diaz suffered damages in the form of lost wages and is entitled to actual damages, six percent prejudgment interest from the date of the breach, and the cost of this lawsuit.

### COUNT III: Breach of Contract under Virginia Common Law (in the alternative to FLSA), *against Defendant Szwanczar (in the alternative to breach of contract against Defendant Custom Framing)*

90. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

91. An employment contract existed between Mr. del Cid Diaz and Defendant Szwanczar by virtue of Defendant Szwanczar offering Mr. del Cid Diaz work at his properties and Mr. del Cid Diaz accepting the offer by performing work at Defendant Szwanczar's properties.

92. The contract was formed in Virginia under Virginia law.

93. Defendant Szwanczar failed to pay Mr. del Cid Diaz for the work he performed at Defendant Szwanczar's properties thereby breaching the contract.

94. As a result of Defendant Szwanczar's breach, Mr. del Cid Diaz suffered damages in the form of lost wages and is entitled to actual damages, six percent prejudgment interest from the date of the breach, and the cost of this lawsuit.

### COUNT IV: Quantum Meruit Under Virginia Common Law (in the alternative to FLSA and breach of contract), *against Defendant Custom Framing*

95. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

96. Plaintiff conferred a benefit upon Defendant Custom Framing by performing labor at Defendant Szwanczar's properties.

97. Custom Framing knowingly and voluntarily accepted Plaintiff's labor, which was of material benefit to Custom Framing.

98. Custom Framing did not compensate Plaintiff for this labor.

99. Plaintiff has been injured as a result of Custom Framing's failure to fully and fairly compensate him for the above-mentioned services.

100. It is inequitable for Custom Framing to retain the benefits of Plaintiff's service without fully compensating him for the value of his services.

101. As a result, Plaintiff is entitled to the reasonable value of the services he performed for Custom Framing, in addition to six percent prejudgment interest from the date of breach, and the cost of this lawsuit.

### COUNT V: Quantum Meruit Under Virginia Common Law (in the alternative to FLSA and breach of contract), *against Defendant Szwanczar (in the alternative to quantum meriut against Defendant Custom Framing)*

102. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

103. Plaintiff conferred a benefit upon Defendant Szwanczar by performing labor at his properties.

104. Defendant Szwanczar knowingly and voluntarily accepted Plaintiff's labor, which was of material benefit to Defendant Szwanczar.

105. Defendant Szwanczar did not compensate Plaintiff for this labor.

106. Plaintiff has been injured as a result of Defendant Szwanczar's failure to fully and fairly compensate him for the above-mentioned services.

107. It is inequitable for Defendant Szwanczar to retain the benefits of Plaintiff's services without fully compensating him for the value of his services.

108. As a result, Plaintiff is entitled to the reasonable value of the services he performed for Defendant Szwanczar, in addition to six percent prejudgment interest from the date of breach, and the cost of this lawsuit.

**COUNT VI: Unjust Enrichment Under Virginia Common Law (in the alternative to FLSA, breach of contract, and quantum meruit), *against Defendant Custom Framing***

109. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

110. Plaintiff conferred a benefit upon Defendant Custom Framing by performing labor at Defendant Szwanczar's properties.

111. Plaintiff had a reasonable expectation of payment for this labor.

112. Custom Framing did not compensate Plaintiff for this labor.

113. Custom Framing knew that Plaintiff conferred this benefit to it.

114. Custom Framing accepted this benefit (namely the value of Plaintiff's labor) under circumstances that render it inequitable for Custom Framing to retain the benefit without paying for its value.

115. Custom Framing did not pay the amount promised to Plaintiff or required by law. Custom Framing was unjustly enriched by retaining the wages owed to Plaintiff for this labor.

116. Plaintiff has been injured and damaged as a result of Custom Framing's failure to fully and fairly compensate Plaintiff for the above-mentioned services.

117. It is inequitable for Custom Framing to retain the benefits of Plaintiff's service without fully compensating him for the value of his services.

118. As a result, Plaintiff is entitled to the reasonable value of the services he performed for Custom Framing, in addition to six percent prejudgment interest since the date of breach, and the cost of this lawsuit.

**COUNT VII: Unjust Enrichment Under Virginia Common Law (in the alternative to FLSA, breach of contract, and quantum meruit),** *against Defendant Szwanczar (in the alternative to unjust enrichment against Defendant Custom Framing)*

119. Plaintiff realleges and incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

120. Plaintiff conferred a benefit upon Defendant Szwanczar by performing labor at his properties.

121. Plaintiff had a reasonable expectation of payment for this labor.

122. Defendant Szwanczar did not compensate Plaintiff for this labor.

123. Defendant Szwanczar knew that Plaintiff conferred this benefit to him.

124.   Defendant Szwanczar accepted this benefit (namely the value of Plaintiff's labor) under circumstances that render it inequitable for him to retain the benefit without paying for its value.

125.   Defendant Szwanczar did not pay the amount promised to Plaintiff or required by law. He was unjustly enriched by retaining the wages owed to Plaintiff for this labor.

126.   Plaintiff has been injured and damaged as a result of Defendant Szwanczar's failure to fully and fairly compensate Plaintiff for the above-mentioned services.

127.   It is inequitable for Defendant Szwanczar to retain the benefits of Plaintiff's service without fully compensating him for the value of his services.

128.   As a result, Plaintiff is entitled to the reasonable value of the services he performed for Defendant Szwanczar, in addition to six percent prejudgment interest since the date of breach, and the cost of this lawsuit.

**REQUESTED RELIEF**

129.   Wherefore, Mr. del Cid Diaz respectfully requests that this court provide the following relief:

130.   Under Count I, declare that Defendants' FLSA violation was "willful," such that a three-year statute of limitations applies under 29 U.S.C. § 255(a). In the alternative, declare that, because there was no FLSA right poster, the statute of limitations for Mr. del Cid Diaz's FLSA claim was equitably tolled;

131.   Under Count I, award Mr. del Cid Diaz his actual damages under the FLSA, jointly and severally against both Defendants, in an amount to be proved at trial, pursuant to 29 U.S.C. § 216(b);

132. Under Count I, award Mr. del Cid Diaz an additional amount as liquidated damages in an amount equal to his actual damages, jointly and severally against both Defendants, pursuant to 29 U.S.C. § 216(b);

133. Under Count I, award Mr. del Cid Diaz his costs and reasonable attorney's fees, as provided by the Fair Labor Standards Act, 29 U.S.C. § 216(b), jointly and severally against both Defendants;

134. Under Count II, in the alternative to Count I, award Plaintiff his unpaid promised wages, in an amount appropriate to the proof at trial, against Defendant Custom Framing, plus statutorily authorized 6% interest payments from the date of failure to pay wages and the cost of this lawsuit, to the extent that such relief would not reduce the amount otherwise owed Plaintiff;

135. Under Count III, in the alternative to Counts I and II, award Plaintiff his unpaid promised wages, in an amount appropriate to the proof at trial, against Defendant Szwanczar, plus statutorily authorized 6% interest payments from the date of failure to pay wages and the cost of this lawsuit, to the extent that such relief would not reduce the amount otherwise owed Plaintiff;

136. Under Count IV, in the alternative to Counts I, II, and III, award to Plaintiff the reasonable value of the services Plaintiff performed for Defendant Custom Framing for which Custom Framing has not yet compensated him, in an amount appropriate to proof at trial, against Custom Framing, plus statutorily authorized 6% interest payment from the date of failure to pay the wages and the cost of this lawsuit, to the extent such relief would not reduce the amount otherwise owed Plaintiff;

137. Under Count V, in the alternative to Counts I through IV, award to Plaintiff the reasonable value of the services Plaintiff performed for Defendant Szwanczar for which Defendant Szwanczar has not yet compensated him, in an amount appropriate to proof at trial, against Defendant Szwanczar, plus statutorily authorized 6% interest payment from the date of failure to pay the wages and the cost of this lawsuit, to the extent such relief would not reduce the amount otherwise owed Plaintiff;

138. Under Count VI, in the alternative to Counts I through V, award Plaintiff the amount Defendant Custom Framing was unjustly enriched, in an amount appropriate to proof at trial, against Custom Framing, plus statutorily authorized 6% interest payment from the date of failure to pay the wages and the cost of this lawsuit, to the extent such relief would not reduce the amount otherwise owed Plaintiff;

139. Under Count VII, in the alternative to Counts I through VII, award Plaintiff the amount Defendant Szwanczar was unjustly enriched, in an amount appropriate to proof at trial, against Defendant Szwanczar, plus statutorily authorized 6% interest payment from the date of failure to pay the wages and the cost of this lawsuit, to the extent such relief would not reduce the amount otherwise owed Plaintiff;

140. Under all counts, pre-judgment and post-judgment interest as permitted by law; and

141. Any other relief the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Kristin Fisher Donovan                                         Date: October 28, 2021
Kristin Fisher Donovan (VA Bar No. 92207)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (571) 620-5261
F: (703) 778-3454
E: kristin@justice4all.org
*Counsel for Plaintiff*